101 F.3d 681
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Gustavo MONCADA, Defendant-Appellant.
 No. 95-1552.
 United States Court of Appeals, Second Circuit.
 April 1, 1996.
 
 APPEARING FOR APPELLEE: Emily Berger, Assistant U.S. Attorney, EDNY, Brooklyn, NY
 APPEARING FOR APPELLANT: Jeremy Gutman, New York, NY
 E.D.N.Y.
 AFFIRMED.
 PRESENT: Hon. RICHARD J. CARDAMONE, Hon. JOHN M. WALKER, Jr., Hon. JOSEPH M. McLAUGHLIN, Circuit Judges.
 
 
 1
 On April 28, 1993, the United States Custom Service intercepted an Airborne Express package containing 5.8 kilograms of 86% pure cocaine in Miami, Florida. The package bore a delivery address of a bar in West Hempstead, NY, where Customs officials attempted a controlled delivery on May 3, 1994. When no one appeared to claim the package, agents reclaimed the box and returned it to Airborne's office in Ronkonkoma, NY. On May 4, 1993, a man claiming to be the addressee called Airborne's office and inquired about the package. He was informed that he could pick it up the next day. On May 5, at about noon, a white Chevrolet containing three men, Manuel Calderon, Sergio Morales, and appellant Gustavo Moncada arrived at the office. Calderon and Morales left the car and entered the building, with Moncada staying behind. A DEA special agent, posing as a desk clerk, asked the two for identification and Morales produced an identification card with the name of the addressee. Moncada remained outside, but at one point got out of the car and peered in through the window.
 
 
 2
 Upon claiming the package, Calderon and Morales went outside and, along with Moncada, placed it in the trunk of the Chevrolet. Calderon and Morales appeared to congratulate each other, but Moncada did not participate in the congratulations and gave no indication that he was pleased by the retrieval. The three men then left in the Chevrolet and drove back towards New York City; the agents followed in six or seven unmarked cars. After getting onto the Van Wyck Expressway, the car, which Moncada was driving, began to change lanes abruptly and increased speed. One officer testified that Moncada appeared to be nervous and to be checking his mirrors.
 
 
 3
 Shortly after the car exited the Van Wyck Expressway, the agents stopped the car and arrested all three men. Calderon and Morales gave the agents false identifications, but Moncada gave his true identity, and informed the agents of the other two men's true identities. The other two later gave their true identities. Moncada also told the officers that he had increased his speed and changed lanes because he had become frightened when he suspected that he was being pursued by some unknown persons.
 
 
 4
 Several months after their arrests, Calderon and Morales agreed to cooperate with the government. At trial, Morales testified that Moncada (with whom he lived) had received a phone call on May 4 from his brother, Alvaro Moncada, asking that he pick up a package on his behalf from Airborne. Alvaro stated that someone named "El Mono" was originally supposed to pick up the package, but because El Mono could not be found, someone else would have to do it. Moncada then telephoned Calderon, and asked that he call Airborne and inquire about the package.
 
 
 5
 According to Calderon, Moncada stayed on the line while he asked about the Airborne package. He was told that he could pick up the package the next day. On May 5, when the three met, Moncada informed Calderon and Morales that the package contained eight kilograms of cocaine and he agreed to pay Calderon $2000 to translate for Morales when Morales picked up the package.
 
 
 6
 At trial, the government also introduced telephone records from Moncada's residence (where Morales also lived) and Calderon's home. The records indicated that a call was placed from Moncada's home to Calderon's on May 4 at 2:50 p.m. and had ended at about 2:53. The records also indicated that a call was placed from Calderon's residence to the Airborne Express office at 2:53 and had ended eight minutes later. During closing arguments, the government contended that the phone records were strong corroboration of Calderon and Morales's stories. Responding to these arguments, defense counsel contended that the records indicated two separate calls and not that a three-way call had taken place and that therefore Calderon had to be lying. In emphasizing the importance of this discrepancy, defense counsel told the jury to ask the prosecutor how the three-way call could have been made in light of the phone records. On rebuttal, the government suggested that a three-way call might be billed in such a way that it appeared that the first call had terminated, even though the first party was still on the line.
 
 
 7
 After deliberations, the jury found Moncada guilty of conspiracy to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) & 846, and conspiracy to import in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 960(b)(1)(B) & 963. Moncada was sentenced to two concurrent terms of 121 months imprisonment, to be followed by five years supervised release.
 
 
 8
 On appeal, Moncada claims that the prosecutor's explanation about the phone records on rebuttal summation was speculation and deprived him of a fair trial. To prevail on this claim, Moncada must show that it caused him substantial prejudice. United States v. LaMorte, 950 F.2d 80, 83 (2d Cir.1991), cert. denied, 504 U.S. 909 (1992). Although this determination is contextual, it "is largely controlled by three factors: (1) the severity of the misconduct; (2) curative measures taken by the district court; and (3) the certainty of conviction absent the misconduct." Id.
 
 
 9
 We have previously held that it is improper for a prosecutor to create a new line of argument based upon the evidence during rebuttal summation. United States v. Russo, 74 F.3d 1383, 1396 (2d Cir.1996). Here, however, it is far from clear that the prosecutor's actions were improper, since defense counsel's summation had invited the government to explain the discrepancy between Calderon's story and the billing records. But even if they were improper, we do not believe that Moncada was substantially prejudiced. First, any misconduct was not severe. Second, the court in its charge admonished the jury that the summations were not evidence and were only argument. Finally, the evidence against Moncada was strong and we are confident that, absent the prosecutor's comments, the verdict would have been the same. Accordingly, Moncada's claim of an unfair trial fails. Id. at 1397.
 
 
 10
 Accordingly, the judgment of the district court is affirmed.